IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-00483-WYD-KMT

CHRISTIAN AUBIN ROBINSON,

    Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, COLORADO,

    Defendant.

**ORDER ON RECONSIDERATION AND AMENDMENT
OF FEBRUARY 20, 2014 SUMMARY JUDGMENT ORDER**

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant's Motion for Partial Reconsideration of Order [Doc.92] or in the Alternative to Certify for Immediate Interlocutory Appeal under 28 U.S.C. § 1292(b) filed February 25, 2014.  A response was filed by Plaintiff Christian Aubin Robinson ["Robinson"] on March 3, 2014, a reply was filed on March 7, 2014, and a surreply was filed on March 26, 2014.  Argument was taken on this motion at a hearing on March 12, 2014.

Defendant the City and County of Denver [the "City"] moves for reconsideration of pages 39 through 43 of my Order on Summary Judgment issued on February 20, 2014 (ECF No. 92).  That portion of the Order denied summary judgment on Robinson's municipal liability claims that the City failed to train its clerks in how to process seemingly conflicting information that could change the target of a warrant, and failed to

implement fail-safes, double-checks and/or technological information to prevent the entry of erroneous warrant information that may change the target of the warrant. The City agrees with, and does not seek reconsideration, of the remainder of the Order which granted summary judgment: (1) on the basis of qualified immunity to the individual officer Defendants; (2) on the municipal liability claims involving the City's alleged failure to train its front-desk officers to conduct a reliable identity and/or probable cause investigation, to implement the Prisoner Identity-in-Question Investigation ["PIQ"] procedure and/or to train its employees to utilize the PIQ procedure; and (3) on the municipal liability claim regarding an alleged policy of deferring to the state district court to schedule court appearances.

I note that the briefing on the summary judgment motion did not address in any detail the issue of whether and under what circumstances the City could be held liable when its officers were dismissed based on qualified immunity. This issue was addressed primarily in connection with the City's motion for reconsideration. The issue has been somewhat of a moving target; indeed, the reply to the motion for reconsideration cited new authority that had never been raised; namely, the case of *Martinez v. Beggs*, 563 F.3d 1082 (10th Cir. 2009). *Martinez* rejected the argument that "if no single individual county employee is found liable, the county may still be liable for a 'systemic injury' caused by 'the interactive behavior of several government officials, each of whom may be acting in good faith.'" *Id.* at 1092 (quotation omitted). It held that, "[t]o the extent this argument suggests that the county can be liable, even if no individual government actor is liable, it is precluded by our prior precedent." *Id.* I

allowed Robinson to file a surreply primarily to address that new authority. I now turn to the merits of the City's motion for partial reconsideration.

II.     ANALYSIS

"'The Federal Rules of Civil Procedure recognize no motion for reconsideration.'" *Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995) (quotation and internal quotation marks omitted). The court's treatment of the motion for reconsideration depends on whether the order is a final order that disposes of all claims and all parties or is an interlocutory order. In this case, the motion seeks review of an interlocutory order. *See Haas v. Tulsa Police Dep't*, 58 Fed. App'x 429, 431 (2003) ("The district court's order granting summary judgment against plaintiffs in some respects and denying it in others was not a final judgment.").

A motion for reconsideration of an interlocutory order "'invok[es] the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.'" *Fye v. Okla. Corp. Com'n*, 516 F.3d 1217, 1224 n. 2 (10th Cir. 2008) (quotation omitted); *see also Nat. Bus. Brokers, Ltd. v. Jim Williamson Productions, Inc.*, 115 F. Supp. 2d 1250, 1255 (D. Colo. 2000) ("Prior to entry of final judgment, district courts have the inherent power to alter or amend interlocutory orders."). "This inherent power is not governed by rule or statute and is rooted in the court's equitable power to process litigation to a just and equitable conclusion.'" *Nat. Bus. Brokers*, 115 F. Supp. 2d at 1256 (quotation and internal quotation marks omitted). "Thus, a court can alter its interlocutory order even where the more stringent requirements applicable to a motion to alter or amend a final judgment under Rule 59(e)

or a motion for relief from judgment brought pursuant to Rule 60(b) are not satisfied." *Id.* While the court has broad discretion to alter its interlocutory orders, "as a practical matter, '[t]o succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" *Id.* (quotation omitted).

In the case at hand, the City argues that when there is no constitutional violation committed by a municipal employee, there can be no municipal liability on a *Monell* claim. Since the court found that the individual officers committed no constitutional violation, the City argues that it cannot be liable on a municipal liability claim. It further asserts that it would be manifestly unjust and clear error in this case to find it deliberately indifferent to the rights of its inhabitants where no constitutional violation was committed. The City also argues that Ms. Goos, the one who changed the SID number of the warrant resulting in Robinson's arrest, did not commit a constitutional violation. At most, her actions were negligent and would not give rise to municipal liability. Thus, the City asserts that I should reconsider the partial denial of summary judgment on the municipal liability claims.

The City's key contention is that I found there was no underlying constitutional violation. While this is accurate, I analyzed the issue of constitutionality only within the limited context of whether the individual officers were entitled to qualified immunity. In that analysis, I found that it was reasonable for Officer Keita to arrest Robinson given the fact that the warrant upon which he was arrested included all of Robinson's identifying information, including his name, birth date, social security number, height,

and weight. (Order on Summ. J. at 21.) I also found that Robinson had not cited clearly established authority for the proposition that Keita had a duty to further investigate Robinson's mistaken identity contention once he matched the identifiers on the warrant, or that this was a constitutional violation. (*Id.* at 23-24.) Indeed, I noted that "cases have routinely found that a failure to investigate a claim of innocence under similar circumstances does not give rise to a Fourth Amendment violation." (*Id.* at 24.) It is within that context that I found no constitutional violation. (*Id.* at 25.)

However, it is undisputed that Plaintiff was in fact wrongly arrested and imprisoned for twelve days on a warrant that mistakenly named him instead of Michael Cagle ["Cagle"]. Having carefully considered the issue and conducted further independent legal research, I invoke my general discretionary authority to revise and amend the summary judgment order to make clear that a constitutional violation did occur in this case. The legal authority I have found through my own independent research convinces me that the warrant was invalid, albeit for a reason not raised in the briefing on summary judgment.

Turning to my analysis, the cases cited by the City in the summary judgment briefing on the constitutionality issue deal primarily with the situation where a person is arrested due to mistaken identity, *i.e.* when the right person is named on the warrant or where there is probable cause to arrest a person but the wrong person is arrested due to mistaken identity. *See Baker v. McCollan*, 443 U.S. 137 (1979) (the plaintiff was arrested pursuant to a valid arrest warrant for plaintiff's brother based on mistaken identity); *Hill v. California*, 401 U.S. 797, 804 (1971) (there was probable cause to arrest

Hill but the police arrested Miller in Hill's apartment, reasonably believing him to be Hill). In that circumstance, as noted in the summary judgment order, "it is clearly established that if police have probable cause to arrest a person, and reasonably mistake someone else for that person, then the arrest of the other person is a valid arrest." (Order on Summ. J. at 21.)  This case does not, however, involve that circumstance.  Instead, the wrong person was named on the warrant at the outset.  Under this circumstance, I find that the issue is whether the warrant violated the particularity requirement of the Fourth Amendment.

On that issue, "[t]he Fourth Amendment's Particularity Clause provides that warrants must 'particularly describ[e] the place to be searched, and the persons or things to be seized." *United States v. Cooper*, 654 F.3d 1104, 1126 (10th Cir. 2011) (quoting *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)).  This requirement "applies both to arrest and search warrants." *Wong Sun v. United States*, 371 U.S. 471, 481 n. 9 (1963).  The seminal case on the constitutionality of arrest warrants in connection with the particularity requirement is *West v. Cabell*, 153 U.S. 78 (1894).  *See Gero v. Henault*, 740 F.2d 78, 83 (1st Cir. 1984).  *West* held that "a warrant for the arrest of a person charged with crime must truly name him, or describe him sufficiently to identify him." *Id.* at 85.  "If it does not, the officer making the arrest is liable to an action for false imprisonment." *Id.*  The *West* rule "is today regularly used as the point of reference for adjudging the particularity of a warrant." *Powe v. City of Chicago*, 664 F.2d 639, 646 (7th Cir. 1981).

In this case, as noted in the original summary judgment order, Robinson's arrest and incarceration arose out of the fact Cagle used Robinson's Colorado identification card to identify himself to Denver Police Department officers when he was arrested in 2009. When Cagle failed to appear at court appearances, a warrant was issued by the state court that contained only Robinson's name, alias, and information except for a SID connected to Cagle. Cagle's name and other identifying information does not appear on that warrant. When the warrant was transmitted to the Denver Sheriff's Department ["DSD"], Mary Goos, an NCIC agent for the DSD, saw that the SID number on the warrant did not match the name "Christian Robinson." She then removed Cagel's SID number and replaced it with Plaintiff's SID number. This modified warrant, which now contained no information related to Cagle, was then distributed to law enforcement per the standardized packing process.

The Seventh Circuit in the *Powe* decision found that a warrant issued for the wrong person in a similar situation violated the particularity requirement of the Fourth Amendment. In that case, the plaintiff alleged he was the victim of a series of unlawful arrests, each arrest based upon the same invalid warrant. As in this case, Powe was the victim of identity theft. *Powe*, 664 F.2d at 642. When the person who stole Powe's identity—Ernest Brooks—was later arrested, he used Powe's stolen identification, pleaded guilty and was sentenced to probation under Powe's name. *Id.* Brooks then violated probation, and a probation violation arrest warrant was issued for the arrest of "Andrew Powe, a/k/a Ernest Brooks". *Id.* Powe was arrested under that warrant several times, and sued the municipalities who arrested him for his arrests and for his

retention in custody after the police were notified that he was not the man sought under the warrant. *Id.* at 643.

The *Powe* court held "that where an arrest is made pursuant to an invalid warrant", the Supreme Court's decision in *Baker* "cannot be applied to preclude the arrestee's claim of an unconstitutional deprivation of liberty." *Powe*, 664 F.2d at 644 (citing *Murray v. Chicago*, 634 F.2d 365, 367 (7th Cir. 1981)). To determine whether *Baker* was appplicable, the court stated it must determine whether the plaintiff alleged "that his arrests were made pursuant to an invalid warrant." *Id*. It approached the issue "bearing in mind that Powe's attack on the warrant. . . is that the warrant was deficient in identifying the person to be arrested." *Id*. That is exactly the situation in this case.

The Seventh Circuit then noted in *Powe* that "[a]n arrest warrant that correctly names the person to be arrested generally satisfies the fourth amendment's particularity requirement, and no other description of the arrestee need be included in the warrant." 664 F.2d at 645. "On the other hand, . . .an arrest warrant that incorrectly names the person to be arrested will usually be deemed insufficient to meet the fourth amendment's particularity requirement unless it includes some other description of the intended arrestee that is sufficient to identify him." *Id*.

While *Powe* recognized the defendant's argument "that the fourth amendment does not guarantee that only the guilty will be arrested", also argued by the City in this case, it stated that the fourth amendment "does guarantee . . . that no person shall be arrested unless there is good reason to believe that he or she has committed a particular crime." 664 F.2d at 647. It then stated:

> By the terms of the fourth amendment, an arrest warrant based upon probable cause and "particularly describing ... the person ( ) ... to be seized" is of course sufficient reason to make an arrest, even if the arrestee should later be found innocent. But an arrest warrant that, by way of description, simply gives one or two of several names which, for all the authorities know, the arrestee might or might not be using, does not provide sufficient information on which an arrest may be based. The inclusion of names that might be incorrect, combined with the omission of a specific description of the person sought, create a substantial risk, not simply that an innocent person will be arrested, but that a person to whom not the least suspicion has attached will be arrested. This risk cannot be tolerated under the fourth amendment.

*Id.* at 647-48. The court further found that the situation in that case was "all the more intolerable because it is avoidable: in Powe's case, for example, the authorities clearly had had sufficient contact with the man who violated probation to be able to describe him in the warrant." *Id.* at 648.

The *Powe* decision thus held that "[t]he failure to describe [the suspect, Ernest Brooks], although the authorities knew there was some uncertainty about his true name, renders the warrant invalid." *Id*. Based on this, it found "that the complaint adequately alleges the probation-violation warrant was invalid for failure to satisfy the fourth amendment's particularity requirement", and the *Baker* decision "does not preclude recovery under section 1983 for an unconstitutional deprivation of liberty." *Id.* at 648; *see also Rogan v. City of Los Angeles*, 668 F. Supp. 1384, 1388-1395 (C.D. Cal. 1987) (warrant was mistakenly issued in the plaintiff's name because Bernard McKandes, accused of committing two robbery-murders, was using the plaintiff's name on various identification documents after he obtained a copy of plaintiff's birth certificate; court found that the NCIC record and the arrest warrant upon which it was based violated the

particularity requirement of the Fourth Amendment where they did not contain McKandes' correct, legal name or his known physical characteristics and where the police had sufficient contact with McKandes to be able to describe him in the warrant).

In the case at hand, the above cases support my holding in this Order that the warrant Robinson was arrested under violated the particularity requirement of the Fourth Amendment. The state court records are clear that Cagle was the defendant who failed to appear at court appearances and for whom the warrant should have been issued, even though he was noted to have an alias of "Christian A. Robinson." (*See*, *e.g.*, Mot. Summ. J., Exs. F, G; Resp. Mot. Summ. J., Ex. 4.)[1] Cagle's SID number was in the warrant, but the warrant was issued in Robinson's name and with Robinson's identifying information. While state court officials may have reasonably believed that "Christian Robinson" was an a/k/a for Cagle, they did not include Cagle's address, physical characteristics, or other identifying information. As in *Powe*, this situation was avoidable as "the authorities clearly had had sufficient contact with [Cagle] to be able to describe him in the warrant." *Powe*, 664 F.2d at 648.

This problem was further compounded by the fact that when Goos received the warrant, she modified it by taking out the only information related to Cagle—his SID number, and replacing it with Plaintiff's SID number. The warrant as now modified, naming the wrong person and without any of Cagle's identifying information, was then

---

[1] Indeed, it appears that the state court's original warrant issued on September 8, 2010, listed Cagle's name. (Order on Summ. J. at 3 n. 3.) However, there is no evidence that this warrant was ever transmitted by the court to the DSD or CBI, and was not the warrant upon which Robinson was arrested.

distributed to law enforcement per the standardized packing process. Under these circumstances, I find that the warrant violates the Fourth Amendment. "The failure to describe him, although the authorities knew there was some uncertainty about his true name, renders the warrant invalid." *Powe*, 664 F.2d at 648. To the extent I found otherwise in the summary judgment order, that ruling is now amended and superseded by this Order.

Having concluded that a constitutional violation occurred, I now must reexamine whether the individual officers are entitled to qualfied immunity. *Groh*, 540 U.S. at 563. The answer depends on whether the right that was transgressed was clearly established—"'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In the original summary judgment order, relying on precedent cited by the City, I stated that it is clearly established that if police have probable cause to arrest a person, and reasonably mistake someone else for that person, then the arrest of the other person is a valid arrest. (Order on Summ. J. at 21) (citing *Hill v. California*, 401 U.S. 797 (1971) and *Jama v. City and Cnty. of Denver*, No. 08-cv-01693-MSK-KLM, 2010 WL 3615027, at *6 (D. Colo. Sept. 9, 2010)). Having more carefully analyzed the issue, I find that precedent is not controlling. This is not a case where the warrant named the right person but the police arrested the wrong person based on mistaken identity. Instead, this is a case where the warrant named the wrong person and was invalid to begin with. Thus, there was no probable cause to arrest Robinson. However, Officer

Keita is still entitled to qualified immunity if his arrest of Robinson was reasonable under the circumstances facing him at the time of the arrest. *See Jama*, 2010 WL 3615027, at *6; *see also Mechler v. Hodges*, 2005 WL 1406102, at *10 (S.D. Ohio June 15, 2005) (the question for the Court is "whether a reasonably well-trained officer would have known that the warrants were illegal. . . .Because Mechler has offered sufficient evidence showing his arrest. . . was objectively unreasonable under the facts of this case, . . . [officer] Hodges [is] not entitled to qualified immunity).

I find that Officer Keita's arrest of Plaintiff was objectively reasonable under the circumstances, even though the warrant was invalid. As discussed in the original summary judgment order, the warrant on its face contained only Robinson's identifying information, including his name, birth date, social security number, height, and weight. It did not list any information as to Cagel. (Order on Summ. J. at 21.) As further noted in that order, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." (*Id.* at 20) (quoting *Hunter*, 502 U.S. at 227 (further quotation omitted). I further reiterate my ruling in the original summary judgment order that Robinson has not cited clearly established authority for the proposition that Keita had a duty to further investigate Robinson's claims of mistaken identity once he matched the identifiers on the warrant, despite Robinson's claims of innocence. (*See* Order on Summ. J. at 22-25.) Accordingly, I reaffirm that Defendant Keita is entitled to qualified immunity, and that summary judgment is appropriate on the first claim against Keita.

I also find that the deputy Defendants are entitled to qualified immunity for the same reasons previously expressed. (Order on Summ. J. at 26-37.) The arrest was made by Keita, and the deputies merely enforced the warrant by transporting Robinson to the Denver Detention Center where he was processed and booked. (*Id.* at 27.) I reaffirm that Robinson has not shown that the deputies' actions violated clearly established law, and that summary judgment is appropriate on claim two against the deputies.

I now turn to the municipal liability claims. The claims that I granted summary judgment on are not at issue in this Order, and are reaffirmed. Thus, I turn to the municipal liability claims that I denied summary judgment on and for which the City seeks reconsideration. Since I have now found a constitutional violation in the case, the City's primary argument in its motion to reconsider is moot. Indeed, "[w]hen a finding of qualified immunity is predicated on the basis that the law is not clearly established, . . . 'there is nothing anomalous about allowing [a suit against a municipality] to proceed when immunity shields the individual defendants[, for] [t]he availability of qualified immunity does not depend on whether a constitutional violation has occurred.'" *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 783 (10th Cir. 1993) (quoting *Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir. 1988)).

I further note that "since *Monell*, the Supreme Court has 'consistently refused to hold municipalities liable under a theory of *respondeat superior*', but nonetheless has imposed liability upon municipalities when the enforcement of their policies or customs by their employees causes a deprivation of a person's federally protected rights."

*Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) (quoting *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 403 (1997)). "Therefore, the Court 'require[s] a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal policy or custom that caused the plaintiff's injury." *Id.* "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a *direct causal link* between the municipal action and the deprivation of federal rights." *Id.* at 404 (emphasis added).

In the case at hand, I reaffirm my previous findings that summary judgment should be denied as to the claims that the City:  (1) failed to train its clerks in how to process seemingly conflicting information that could change the target of a warrant, and (2) failed to implement fail-safes, double-checks and/or technological information to prevent the entry of erroneous warrant information that may change the target of the warrant.  (*See* Order on Summ. J. at 39-43.)   As I noted in the previous summary judgment order, "[m]unicipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."  (*Id*. 39) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010)).

Thus, I found in my previous summary judgment order, and now reaffirm for purposes of summary judgment, that the City was the moving force behind the violation through the evidence supporting Robinson's claim that the City failed to train its warrant clerks or implement warrant procedures to ensure that this type of false arrest could not occur.  Indeed, the alleged failure to train resulted in Goos removing Cagle's SID

number and replacing it with Robinson's SID number, which was undisputedly the most important information in the warrant.  Further, I found, construing the evidence in the light most favorable to Robinson, that there is evidence that supports a deliberate indifference finding, because "a reasonable jury could find that Denver had actual or constructive notice that its failure to train as to how to process conflicting information during the packing process was substantially certain to result in a constitutional violation" and the City "consciously or deliberately chose to disregard the risk of harm." (Order on Summary Judgment at 40.)  I found the same to be true with regard to the City's failure to implement fail-safes, double-checks and/or technological information to prevent the entry of erroneous warrant information that may change the target of the warrant.  (*Id.*)  The City has not specifically challenged or moved for reconsideration of any of the above findings and, finding no such grounds, I reaffirm these findings.

In finding claims for municipal liability for which summary judgment is not proper, I relied on the Third Circuit's decision in *Berg v. County of Allegheny*, 219 F.3d 261 (3rd Cir. 2000).  (Order on Summ. J. at 41-42.)  I also find the *Powe* and *Rogan* cases discussed previously in this Order instructive on this matter.  Thus, in *Powe* the court noted that "a municipality may be cast in damages only for its own acts or omissions, and a municipality 'acts' by establishing or countenancing policies or practices which its employees are expected to follow in performing their duties."  664 F.2d at 649.  It went on to explain:

> This predication of liability upon fault means that when an individual official breaks with official policy, and in doing so violates the constitutional rights of another, then that official, and not the municipality whose policies he

>breached, should be made to bear the liability. Conversely, when an official performs his duties according to established policies or practices, but in doing so violates another's rights, then it is the municipal entity, which established or perpetuated the practices, that should be held liable.

*Id.* The crucial question "is whether the unconstitutional acts complained of were caused by a policy or custom of the municipality." *Id.* at 650.

The Seventh Circuit noted that "Powe has alleged that he was the victim of a series of unlawful arrests, each arrest based upon the same, allegedly invalid, warrant", and found that "his allegations are sufficient to raise the inference that the municipal defendants are responsible for the challenged arrests. *Powe*, 664 F.2d at 651. In support of this finding, it stated:

>The complaint indicates that the challenged probation-violation warrant was prepared, promulgated, and executed by various employees of separate departments of the defendants law enforcement agencies. Assuming the warrant was invalid, its invalidity would lie, as we discussed in part II A above, in the failure of the municipal authorities to include in the warrant an adequate description of the person sought. This failure to describe the arrestee was repeated four times. We find it reasonable to infer that the inadequacy of the description in the warrant was systemic in nature-that is, that it resulted from the procedures followed by the defendants' law enforcement agencies in issuing warrants of the type involved here. Given this reasonable inference, we must conclude that Powe is entitled to maintain his suit against the defendant municipalities.

*Id.*

Similarly, in *Rogan*, the court found that municipal liability could lie where the officers who input the information into the arrest warrant and the NCIC system, and who did not modify the information in the NCIC system once the plaintiff was misidentified as the suspect, received no training in the procedures for or the necessity of amending information that had been entered into the NCIC system when additional or more

accurate information became available. *Id.* at 1396-98. The court concluded that the City was liable based on its "failure to (i) adopt any policy, (ii) train, and (iii) supervise its police officers regarding: (a) the Fourth Amendment requirement that the arrest warrant and the NCIC record created pursuant thereto describe the suspect with particularity; and (b) the procedures for and the necessity of amending the NCIC record when additional or more accurate descriptive information becomes available" were both grossly negligent and systemic in nature." *Id.* at 1398.

As in *Powe* and *Rogan*, the municipal authorities in this case failed to provide an adequate description of the person sought in the warrant. Indeed, Goos took out the most important piece of information in the warrant that would have identified the correct person—the SID number. A reasonable jury could find that this resulted from the failure to train as to how to process conflicting information during the packing process as well as the City's failure to implement fail-safes, double-checks and/or technological information to prevent the entry of erroneous warrant information that may change the target of the warrant. Under these circumstances, I affirm my prior ruling that Robinson is entitled to maintain his suit against the City as set forth in the original summary judgment order.

Based on the foregoing, I deny Defendant's Motion for Partial Reconsideration of Order on the grounds it requested. However, I have reconsidered that portion of my ruling which found no constitutional violation. The Order on Summary Judgment of February 20, 2014, is thus amended as set forth herein.

Finally, I address the City's argument that if I determine reconsideration is not appropriate, I should certify the partial denial of summary judgment motion on the municipal liability claims for immediate interlocutory appeal under 28 U.S.C. § 1292(b). I reject this argument. First, I have not determined that reconsideration is inappropriate, I did, however, reconsider and amend the original summary judgment order on grounds other than those urged by the City.

As to whether my ruling on reconsideration should be certified, I note that four criteria must be satisfied before an issue may certified for appeal: (1) the action must be a "civil action," (2) the court must conclude that the order from which the appeal is to be taken involves a "controlling question of law;" (3) upon which there exists "substantial ground for difference of opinion," and (4) the court must believe that "immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Grand Jury Proceedings June 1991*, 767 F. Supp. 222, 223 (D. Colo. 1991). As to the third requirement, the question presented for certification must be difficult, novel, and involve "a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions." *Id.* at 226.

The first two requirements are met. This is a civil action and the question of law at issue is arguably controlling. However, I find that the question of municipal liability in this case is not novel and does not involve a question on which there is little precedent. The Tenth Circuit has made clear the circumstances in which a municipality can be liable for its own acts, and I found under the law that a constitutional violation occurred for which the City was the moving force through its failure to train or implement

procedures. The City has not shown that there may be a substantial ground for difference of opinion and I find there is none, particularly in light of the *Berg* decision and the other authority cited herein. Finally, I do not believe an immediate appeal from the order may materially advance the ultimate termination of the litigation in this case. Indeed, certification to permit an interlocutory appeal would only serve to prejudice Robinson, who has already waited over two years for his day in court and who has a trial date set in less than two weeks.

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Partial Reconsideration of Order [Doc.92] or in the Alternative to Certify for Immediate Interlocutory Appeal under 28 U.S.C. § 1292(b) (ECF No. 95) is **DENIED**. While I find no grounds in the motion for reconsidering my decision, I have invoked my discretionary authority to reconsider the portion of my decision that found no constitutional violation. Accordingly, it is

ORDERED that the February 20, 2014 Order is **AMENDED** to reflect that a constitutional violation occurred in this case and as otherwise set forth herein. Finally, it is

ORDERED that on or before **Friday, April 18, 2014**, counsel for the parties shall jointly contact my Chambers at (303) 844-2170 to set a new trial date.

Dated: April 10, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

-19-